The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LINDA WELCH, individually and in her capacity as personal representative of the ESTATE of DAVID J. WELCH,<br><br>Plaintiff,<br><br>v.<br><br>Crane Co. Individually and as successor-in-interest to CHAPMAN VALVE CO. and DEMING PUMPS; and VELAN VALVE CORPORATION,<br><br>Defendants. | Case No. 2:22-cv-00302-RAJ<br><br>**ORDER** |

This matter comes before the Court on Defendant Redco Corporation f/k/a Crane Co.'s ("Crane") Motion for Summary Judgment (Dkt. # 32) and Defendant Velan Valve Corp.'s ("Velan") Motion for Summary Judgment (Dkt. # 33). The Court has reviewed the motions, each opposition filed by Plaintiff (Dkt. ## 39, 41), Defendants' replies (Dkt. ## 48, 49), and is fully advised. Oral argument is unnecessary to decide these motions. For the reasons stated below, the Court **DENIES** the Motion for Summary Judgment as to Crane and **GRANTS** the Motion for Summary Judgment as to Velan.

ORDER – 1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Decedent David Welch served in the United States Navy from 1965 to 1969. Declaration of Kevin J. Craig ("Craig Decl.") ISO Velan MSJ, Dkt. # 34, Ex. 1 at 4 (Plaintiff's Responses to Interrogatories). From 1966 to 1968, he worked on the *USS Carronade* and from 1968 to 1969 aboard the *USS Princeton*. *Id.* at 6-7. At the time, both the *Carronade* and the *Princeton* were "coming out of mothballs," as they were being recommissioned for active service after the Korean War. Dkt. # 1 (Complaint) ¶¶ 3.2, 3.3. Mr. Welch worked as a fireman in the pipefitters' welding shop on the ships. Deposition of D. Welch ("Welch Dep.") 47:18-22. As part of his responsibilities, Mr. Welch worked alongside and supported the "yardbirds," civilian personnel doing repair work for the Navy in shipyards. *Id.* at 36:3-14. This entailed working on various valves and pumps, *id.* at 73:24-74:3, and monitoring gauges, especially while assigned to the *Carronade*. *Id.* at 367:25-368:18.

The cleanup work created a "big mess" of asbestos packing that he and others were required to clean up. *Id.* at 35:7-14, 36:18-37-1. When replacing packing on valves onboard the *Carronade*, Mr. Welch would use wire-like tools to pull the old packing out, using compressed air as an aid to "clear [it] out." *Id.* at 37:9-39:23. During the six-month long overhaul of the *Princeton*, valve repair was done by Mr. Welch and valve and pump repair was conducted by yardbirds in his proximity. *Id.* at 68:1-16; 73:24-74:3. Mr. Welch described this work as "regular maintenance," as there were "thousands" of valves on the ships requiring work. *Id.* at 42:6-16. In July 2021, Mr. Welch toured the *USS Lexington*, the sister ship to the *Princeton,* during which he described his familiarity with various valves that he worked on during his Naval career. *See* Dkt. # 42-1 (Notice of Filing of Flash Drive Containing Ex. 5, Welch Video Clip).

After the conclusion of his military service, Mr. Welch worked as a welder in the Fairhaven Shipyard in Bellingham and as a welder and pipefitter at the ARCO Refinery in Ferndale, among other jobs. Dkt. # 34, Ex. 1 at 6-7. In May 2021, he was diagnosed with mesothelioma. Dkt. # 1 ¶ 3.7. However, Plaintiff's claims arise solely out of Mr.

ORDER – 2

Welch's service on the *Carronade* and *Princeton. See* Dkt. # 1.

Plaintiff seeks to hold Defendants liable for Mr. Welch's mesothelioma, which they allege was caused by his exposure to asbestos during his time in the Navy. *Id.* at ¶ 3.7. On March 14, 2022, Plaintiff filed a complaint against Defendants Crane Co. and Velan Valve Corporation alleging that his mesothelioma was caused by asbestos-containing components and insulation manufactured by the companies. *Id.* Plaintiff's claims are based on "negligence and strict product liability under Section 402A of the Restatement of Torts as adopted by the State of Washington." Dkt. # 1 (Complaint) ¶ 4.1. Plaintiff alleges that:

> "[t]he liability-creating conduct of defendants consisted, *inter alia*, of negligent and unsafe design; failure to inspect, test, warn, instruct, monitor and/or recall; failure to substitute safe products; marketing or installing unreasonably dangerous or extra-hazardous and/or defective products; marketing or installing products not reasonably safe as designed; marketing or installing products not reasonably safe for lack of adequate warning and marketing or installing products with misrepresentations of product safety.

*Id.*

Mr. Welch died on August 8, 2022 due to malignant mesothelioma, Dkt. ## 24, 26, and his wife Linda Welch was thereafter substituted as plaintiff of record individually and in her capacity as the personal representative of Mr. Welch's estate. Dkt. # 27. On May 9, 2023, Crane and Velan filed motions for summary judgment. Dkt. ## 32, 33.

In support of this suit, Plaintiff provides the opinion of Commander Andrew Ott, a Navy veteran and maritime expert with experience working as an engineering plant Ship Superintendent and Project Manager at the Norfolk Naval Shipyard. Dkt. # 42, Ex. 7 at 1-3 ("Ott Decl."). After retiring from the military, Mr. Ott worked for a marine technical services company providing support to the Navy until 2010. *Id.* Since 2007, Mr. Ott has provided technical expertise to law firms representing parties involved in lawsuits related to personnel exposure to asbestos and asbestos-containing equipment. *Id.* Mr. Ott provides the opinion that Mr. Welch was subjected to airborne asbestos fibers when he,

ORDER – 3

and others in his vicinity, "maintained, repaired, and overhauled engineering plant equipment and valves that were designed, manufactured, and sold by the various equipment manufacturers" while serving on the *Princeton* and *Carronade*. *Id.* at 5.

Mr. Ott opines that Mr. Welch was subjected to asbestos fibers and dust on the various ships on which he worked when: 1) Mr. Welch performed routine activities and duties of his trade related to the manufacturers' equipment and valves that contained asbestos insulation, gasket materials and packing materials; and 2) when he was in the vicinity of work performed by others when they overhauled equipment and valves containing asbestos insulation, gaskets and packings. *Id.* at 6. As to the presence of Velan and Crane equipment onboard the *Princeton* and *Carronade*, Mr. Ott will opine that he observed evidence of Velan steam traps onboard the *USS Lexington*, a vessel similar to the *Princeton*, and that Crane supplied dozens to hundreds of valves for the construction of both ships. *Id.* at 147.

Additionally, Plaintiff provides the opinion of Dr. Steven Haber, a pulmonologist who reviewed Mr. Welch's medical and radiology records and export reports, and interviewed Mr. Welch. Dkt. # 42, Ex. 8 at 2. Dr. Haber offers the opinion that "Mr. Welch had frequent, regular, and/or repetitive asbestos exposures related to Crane valves while in the Navy. Even if not his sole source of exposure, this was a significant and substantial exposure source and therefore was a substantial contributing factor in causing Mr. Welch's mesothelioma." *Id.* at 4. He offers the same opinion as to Velan. *Id.*

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty*

ORDER – 4

*Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnell-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

As to the choice of law, Velan argues that maritime law governs this case and Crane similarly cites to asbestos cases analyzed under maritime law. Plaintiff does not dispute the application of this standard. *See McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016)) (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865 (1086)). Although Plaintiff invokes this Court's diversity jurisdiction in her complaint, Dkt. # 1 at 2, this "does not preclude the application of maritime law." *Nelson v. Air & Liquid Systems Corp.*, No. C14-0162-JLR, 2014 WL 6982476, at *8 (W.D. Wash. Dec. 9, 2014) (quoting *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 206 (1st Cir. 1988)) (citations omitted).

### III.  DISCUSSION

**A.) Velan's Motion for Summary Judgment**

ORDER – 5

1   Velan moves for summary judgment, arguing that Plaintiff has failed to show that
2   Mr. Welch was exposed to any asbestos-containing equipment or products that were
3   manufactured or supplied by Velan. Dkt. # 33 at 2-3. Further, Velan argues, Plaintiff
4   lacks evidence that Mr. Welch experienced substantial exposure to the relevant asbestos
5   for a substantial period of time, such that the exposure was a "substantial contributing
6   factor in causing his injuries." *Id.* at 15-16 (citing *McIndoe*, 817 F.3d at 1174. According
7   to Velan, Plaintiff's case is indistinguishable from recent decisions in which the Court
8   found that the "mere presence" of the defendant's products or equipment on board the
9   Plaintiff's vessel was insufficient to support summary judgment. Dkt. # 33 at 10 (citing
10  *Yaw v. Air & Liquid Sys. Corp.*, No. C18-5405-BHS, 2019 U.S. Dist. LEXIS 140152, at
11  *9-11 (W.D. Wash. Aug. 19, 2019); *Deem v. Air & Liquid Sys. Corp.*, No. C17-5965-
12  BHS, 2019 U.S. Dist. LEXIS 203608, at *17-19 (W.D. Wash. Nov. 22, 2019); *Wineland
13  v. Air & Liquid Sys. Corp.*, No. C19-0793-RSM, 2021 WL 3423950, at *2-3 (W.D.
14  Wash. Aug. 5, 2021)).

15  Under maritime law, to prevail on a strict liability or negligence claim, Plaintiff
16  must show that Mr. Welch "was actually exposed to asbestos-containing materials that
17  were installed by [Velan] and that such exposure was a substantial contributing factor in
18  causing his injuries." *McIndoe*, 817 F.3d at 1173 (noting that the Supreme Court has
19  recognized that federal maritime law incorporates actions for products liability, including
20  those that sounds in strict liability). Similarly, under Washington law, 'the plaintiff must
21  establish a reasonable connection between the injury, the product causing the injury, and
22  the manufacturer of that product. In order to have a cause of action, the plaintiff must
23  identify the particular manufacturer of the product that caused the injury." *Klopman-
24  Baerselman v. Air & Liquid Sys. Corp.*, No. 3:18-cv-05536-RJB, 2019 WL 5064765, at
25  *5 (W.D. Wash. Oct. 9, 2019). "Regardless, causation is an essential element under either
26  Washington product liability or maritime-based tort law." *Id.* at *16. The Court agrees
27  with Velan that Plaintiff has not produced evidence from which a reasonable jury could
28  conclude that Mr. Welch suffered substantial exposure to asbestos dust from Velan

ORDER – 6

products while on the *Princeton* and *Carronade*.

Much like the plaintiff in *Yaw*, Plaintiff here fails to submit evidence to establish a connection between Velan products and Mr. Welch's mesothelioma. *Yaw*, 2019 WL 3531232 at *4. Mr. Welch testified that he learned a great deal about valves during his service, Welch Dep. 32:10-14, and that the debris-creating work of ripping out old valve packing was conducted by yardbirds within his vicinity on the *Carronade*. *Id.* 68:11-16. Indeed, one of Mr. Welch's responsibilities was cleaning up after the yardbirds' work. *Id.* 36:18-37:1. However, Plaintiff produces no fact witness placing Mr. Welch within proximity of any Velan valves or gaskets (or other equipment, for that matter) during the relevant time frame. Here, Plaintiff's argument that his exposure to asbestos was due to Mr. Welch's work on or near Velan valves in particular is not "more than conjectural." *McIndoe*, 817 F.3d at 1176.

Testimony from Plaintiff's expert witness, Mr. Ott, fails to shore up Plaintiff's allegations. According to Mr. Ott, Velan supplied approximately 20 steam traps and 60 high-pressure steam valves associated with those traps for the *Carronade* and 250 steam traps and 1000 high-pressure steam valves on the *Princeton*. Ott Decl. at 154. According to Mr. Ott, onboard the *USS Lexington*, a vessel similar to the *Princeton*, he observed "clear evidence of retrofitting with Velan steam traps" most likely during the 1950's and "a very large number of the Velan valves associated with such steam traps." Ott Decl. at 158. He therefore opines that Mr. Welch "was exposed to asbestos dust and debris created during maintenance and repair work of Velan steam traps and valves onboard the *USS Carronade* and *USS Princeton*." However, this does not establish that Mr. Welch suffered from substantial exposure from asbestos dust due to Velan equipment onboard either ship, and Mr. Ott's testimony as to the existence of Velan steam traps on the *Lexington* do not bridge this factual gap. Further, even if the evidence suggests that Velan-branded equipment was installed on both vessels, no evidence places Mr. Welch within the vicinity of that equipment and Mr. Welch, in his testimony, did not identify Velan as a specific brand on which he made repairs. "More is needed than simply placing

ORDER – 7

a defendant's products in the workplace and showing that the decedent was occasionally exposed to asbestos dust from those products." *Wineland*, 2021 WL 3423950, at *3 (citing *Lindstrom*, 424 F.3d at 1176-77).

Because Plaintiff has failed to raise a material question of fact as to whether Mr. Welch experienced substantial exposure to Velan products, the Court may end its inquiry there. As such, the Court concludes that Plaintiff has failed to submit sufficient factual evidence to create material questions of fact as to Velan's liability under the theories asserted by Plaintiff.

### B.) Crane Co.'s Motion for Summary Judgment

Crane similarly moves for summary judgment, arguing that Plaintiff "has set forth no evidence or testimony indicating that Mr. Welch substantially worked with or around Crane Co. products at any time," including in a way that would have exposed him to asbestos, and therefore cannot show that asbestos exposure from Crane products was a substantial factor in the development of Mr. Welch's alleged disease. Dkt. # 32 at 1, 4. Further, Crane argues, even if Plaintiff could show that Mr. Welch worked around Crane products, she "cannot demonstrate that such products contained asbestos-containing original component parts for which" Crane is responsible. *Id.* Plaintiff points to expert testimony provided by Mr. Ott and Dr. Haber that place Crane-branded valves on the *Princeton* and *Carronade*[1], and identify Mr. Welch's work on Crane valves as a source of "significant and substantial exposure[2]."

Crane also cites to recent cases from this District addressing asbestos exposure— *Deem*, *Yaw*, and *Klopman-Baerselman*— in support of its argument that Plaintiff's evidence is insufficient to meet the standard set forth in the Ninth Circuit. The Court, however, finds each case to be distinguishable from the facts presented vis-à-vis Crane. In *Deem*, the plaintiff presented the testimony of two individuals who worked with the

---

[1] Ott Decl. at 147.
[2] Olson Decl., Ex. 8 at 4.

ORDER – 8

1  deceased plaintiff on board several ships in the Puget Sound Naval Shipyard. *Deem*, 2020
2  WL 419453, at *1-2. The Court found that Plaintiff's evidence of exposure, advanced via
3  Mr. Deem's co-workers, only put him "aboard ships during the period that they worked
4  with Mr. Deem and declare[s] that machinist sometimes worked on specific products that
5  could have obtained asbestos." *Id.* at *4. Additionally, plaintiff's expert's opinion was
6  based primarily on the testimony of the co-workers, and the Court found it to be
7  "speculation." *Id.* Here, Mr. Welch's own testimony puts him onboard the *Princeton* and
8  *Carronade* and details his own work on valves, gaskets, and packing on both ships.
9  Welch Decl. 67:22-68:4.

10      *Yaw* concerns a plaintiff who also worked at the Puget Sound Naval Shipyard on
11  numerous ships as a shipfitter. *Yaw*, 2019 WL 3891792, at *1. In testifying about his
12  work on various ships, Mr. Yaw failed to remember working on any particular product on
13  any particular ship. *Id.* At most, the Court held, plaintiff submitted evidence establishing
14  that Mr. Yaw was in engine and boiler rooms that contained dust, but did not identify any
15  particular product that created the dust or if other workers worked on a particular product
16  that created dust. *Id.* at 3. Notably, plaintiff's expert "fail[ed] to connect Mr. Yaw's
17  presence at any specific time to any specific defendant's product or activity." *Id.* In
18  contrast, here Mr. Welch testified to working on valves during his tenure as a yardbird
19  and how the *Carronade*'s valves were "encased in asbestos." Olson Decl., Ex. 4; Welch
20  Dep. 43:20-44:5. Indeed, while looking at a photo of a Crane valve, he recognized it and
21  testified that it "would have been covered in asbestos." Welch Dep. at 80:18-81:4. Mr.
22  Welch's testimony regarding his work on valves and Crane products is bolstered by Mr.
23  Ott's testimony as to his responsibilities (based on the Navy's Bluejackets' Manual
24  describing the training and work of a Fireman). Ott Decl. at 72. Further, Mr. Ott's
25  opinion that Crane supplied valves containing asbestos gaskets and packing to both ships
26  is at least partially based on his review of Navy and Crane Co. purchase documents—not
27  speculation. Ott Decl. at 144-147.

28      Finally, the plaintiff in *Klopman-Baerselman* "offered no testimony of witnesses

ORDER – 9

with personal knowledge of Decedent using or otherwise being exposed to an asbestos-containing product for which [Defendant was] responsible." 2019 WL 5064765, at *4. That is in contrast to the facts before the Court, where Mr. Welch's testimony placed Crane products in his vicinity. Indeed, he testified to the asbestos that he personally observed blanketing the Crane product. And the testimony of Dr. Haber identifies this asbestos exposure as a substantial contributing factor in causing Mr. Welch's mesothelioma.

Ultimately, "the determination of the existence of a material fact is often a close question." *Yaw*, 2019 WL 3891792, at *3. However, Plaintiff "may raise a genuine issue of material fact concerning exposure by presenting either direct or circumstantial evidence that [plaintiff] worked on a particular defendant's asbestos-containing product (or near it while others worked on it) and that such work would create the conditions necessary for asbestos exposure," *Nelson*, 2014 WL 6982476, at *12, and Plaintiff makes such a showing. While Crane argues that Mr. Ott's opinions cannot place Mr. Welch near any Crane valve, Dkt. # 48 at 3, this argument ignores that Mr. Ott's testimony tends to corroborate Mr. Welch's recollections of his work as a yardbird. Further, this goes to the weight—not admissibility—of Ott's opinions. *Nevada Dept. of Corrections v. Greene*, 648 F.3d 1014, 1018-19 (9th. Cir. 2011); *see also Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1017, n. 14, (9th. Cir. 2004) (questions regarding the nature of an expert's evidence go more towards the weight of the testimony and are properly explored during direct and cross-examination). Because the Court must resolve any factual issues of controversy in favor of Plaintiff, the Court finds that Plaintiff has raised a genuine issue of material fact regarding Mr. Welch's exposure to Crane products while working aboard the *Princeton* and *Carronade*, and whether such exposures were a substantial factor in his development of mesothelioma. *See McIndoe*, 817 F.3d at 1176.

### C.) Defendants' Duty to Warn

Both Velan and Crane argue that neither defendant had a duty to warn about defects or hazards posed by asbestos-containing products onboard the *Princeton* and *Carronade*.

ORDER – 10

*See* Dkt. # 32 at 7; Dkt. # 33 at 14, n. 4. Under maritime law, a manufacturer "has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Air & Liquid Sys. Corp. v. Devries*, 139 S. Ct. 986, 991. The product in effect requires the part in order for the integrated product to function as intended when (i) a manufacturer directs that the part be incorporated, (ii) the manufacturer itself makes the product with a part that the manufacturer knows will require a replacement with a similar part, or (iii) a product would be useless without the part. *Id.* at 995-96 (internal citations omitted).

  Velan argues that there is no admissible evidence showing: 1) that Velan equipment "required" the use of asbestos-containing parts or would be useless if used with non-asbestos components, 2) that Velan knew that working with asbestos-containing gaskets and packing was likely to be dangerous, and 3) that Velan had no basis to believe that the Navy was unaware of any potential issues associated with asbestos and its equipment. Dkt. # 33 at 14, n. 4. Plaintiff presents evidence that Velan supplied replacement parts, including asbestos-containing cover gaskets, for ship maintenance repair, citing to Velan steam trap parts pricing lists that include parts for the "Type N" steam trap and Velan's technical manual for steam traps on Navy ships that refer to the same replacement part. Ott Decl. at 166-67. In spite of this, Plaintiff's argument as to Velan's duty to warn fails for the same reason Plaintiff's causation argument fails: Plaintiff fails to place Mr. Welch in proximity to Velan-branded equipment in particular during his time on the *Princeton* and *Carronade.* This is insufficient to raise a question of fact regarding the three prongs of the *DeVries* test, and Velan is entitled to summary judgment on this issue.

  Crane, citing Washington law, argues that equipment manufacturers may not be held liable, under negligence or strict products liability, for failing to warn of the defects and dangers posed by a product that they did not manufacture, sell, or otherwise place into the stream of commerce. Dkt. # 32 at 7 (citing *Braaten v. Saberhagen Holdings, Inc.*,

ORDER – 11

165 Wn.2d 373, 396-97, 198 P.3d 493 (2008); *Simontta v. Viad Corp.*, 165 Wn.2d 341, 353-54, 197 P.3d 127 (2008); and *DeVries*, 139 S. Ct. 986). Crane argues that the Washington Supreme Court's decision in *Braaten*, in which the Court found that Crane Company catalogs advertised both asbestos *and* non-asbestos packing and gasket material and held that Crane had no duty to warn under common law products liability or negligence principles, is entitled to deference. Dkt. # 48 at 7; *Braaten*, 165 Wn.2d 373, 395. Because of this, Crane argues, even if this Court were to apply the standard more recently set forth in *DeVries*, it is still entitled to summary judgment on this issue.

Plaintiff maintains that questions of fact exist under each prong of *DeVries*. As to the first prong, Plaintiff cites to Mr. Ott's opinion that asbestos-containing gaskets and asbestos-containing packets were "designed to be periodically disturbed" during their normal service life. Ott Decl. at 10. Crane's Master Parts List indicated that replacement asbestos-containing components for Crane valves were supplied directly from Crane. *Id.* at 132-133. Plaintiff also cites to a manual identifying gaskets made with Crane's "proprietary asbestos gasket material" called "Cranite" to be used on Navy ships. *Id.* at 135. The Court therefore finds that Plaintiff has raised an issue of fact as to the first prong. *Spurlin v. Air & Liquid Sys. Corp*, 537 F. Supp. 3d 1162 (S. D. Cal. 2021) (applying *DeVries* standard and finding that Crane made its products with asbestos and knew that they would require replacement with similar parts).

Further, Plaintiff argues that Crane knew or had reason to know that the alleged "integrated products," asbestos gaskets and packing, were likely to be dangerous for their intended uses, because by 1965, medical and scientific literature reflected a growing realization as to the dangers posed by asbestos. Dkt. # 41 at 24. And finally, Plaintiff argues that the third prong is met based on Mr. Ott's opinion that the Navy was unaware of the hazards of asbestos exposure during the relevant time frame, and he has found no evidence that manufacturers raised potential alarms at the time. Ott Decl. at 293. The Court is persuaded, and finds that Plaintiff has raised issues of fact as to the second and third prongs. *Spurlin*, 537 F. Supp. 3d at 1174.

ORDER – 12

## IV.  CONCLUSION

For the foregoing reasons, Defendant Velan's Motion Summary Judgment (Dkt. # 33) is **GRANTED**. Defendant Crane's Motion for Summary Judgment (Dkt. # 32) is **DENIED**.

DATED this 30th day of June, 2023.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 13